UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BRIAN CUTRONE and JESSICA CERVONE,
*individually and on behalf of all others similarly
situated*,

         Plaintiffs,

  -against-

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

         Defendant.

-----------------------------------------------------------------x

<u>MEMORANDUM & ORDER</u>

13-cv-3075 (ENV) (VMS)

VITALIANO, D.J.,

  On February 20, 2013, plaintiffs Brian Cutrone and Jessica Cervone filed this putative class action against Mortgage Electronic Registration Systems, Inc. ("MERS"), alleging violations of New York General Business Law ("GBL") §§ 349 and 350, as well as breaches of implied warranties. The action was commenced in Supreme Court, Kings County. MERS answered on April 5, 2013, and demanded a bill of particulars. Plaintiffs responded on or about May 6, 2013. On May 24, 2013, MERS filed a notice of removal to this Court. Plaintiffs now seek remand upon their motion of June 24, 2013.[1] For the reasons that follow, the motion to remand is granted.

---

[1] Plaintiffs originally moved remand without having proposed a briefing schedule, and without filing all responsive briefs in an ECF bundle, as required by this Court's Individual Motion Practice and Rules. All briefing was later completed on July 24, 2013 in accordance with this Court's scheduling order.

1

## Background

This dispute arises from the taxation of certain mortgage transactions by the State of New York.[2] At all times relevant to this litigation, under Article 11 of the New York Tax Law, mortgages were taxed as an excise, with the tax payable when a mortgage securing a new loan was recorded. Under certain circumstances, the tax was applicable to mortgage refinancings and, effectively, subjected the refinancing to a second excise tax. In practice, however, the use of consolidation, extension, and modification agreements ("CEMAs") allows lien holders to assign mortgages and notes to new lenders, for a fee paid by the mortgagee to the original lien holder; the existing mortgage is then modified, instead of satisfied and replaced by a "new loan" altogether. CEMA refinancing amounts, effectively, to modification and assignment, and is thus not considered a taxable event under New York's mortgage recording tax law.

MERS provides services designed to simplify the mortgage financing and refinancing process. It claims the ability to sign, record, and transfer mortgages electronically. MERS becomes (and remains) the technical mortgagee of record, regardless of the number of times a mortgage is refinanced and of the identity of the true lender. In connection with the facilities it offers, MERS maintains a registry of

---

[2] The following facts and allegations are drawn from the face of plaintiffs' complaint. The pleading informs the Court's determination of its subject matter jurisdiction and the propriety of removal. *See Town of Southold v. Go Green Sanitation, Inc.*, No. 12-cv-3837, 2013 WL 2565689, at *6 (E.D.N.Y. 2013) (noting that "[t]he Second Circuit has consistently dismissed cases removed to its federal district courts where subject matter jurisdiction could not be justified based on the plaintiff's original well-pleaded complaint" and collecting cases).

electronically executed mortgage notes and securities instruments. The MERS regime is emblematic of the digital world's paperless society. In the pre-MERS age, each document and note physically existed, separate and apart from all other interests and documents. A physical transfer of the separately existing note accomplished the assignment from assignor to assignee. With MERS, a change on the electronic registry accomplishes the assignments of interests. The electronic age comes a cropper when a filing is necessary to establish notice and priority of the encumbrance. As in the pre-digital age, these tasks are accomplished by the filing of a copy of the mortgage, however signed or modified, in the County Clerk's recording office.

Plaintiffs obtained, on March 27, 2008, a MERS "E-Sign" mortgage for real property they owned in New York, and filed it in the County Clerk's office, at which point they paid $7476 in mortgage recording taxes on the E-Sign mortgage. Subsequent to that filing, plaintiffs allege, a ruling by the Appellate Division, Second Department called into question whether mortgage and note assignments executed by MERS were valid assignment, because MERS at no point actually "holds" mortgage notes—that is, possesses a physical instrument existing separate and independently of the MERS electronic registry. (Compl. ¶ 45); *see Bank of New York v. Silverberg*, 86 A.D.3d 274, 926 N.Y.S.2d 532 (2d Dep't 2011). In sum and substance, the New York courts seem to have reasoned that, because MERS did not have physical possession of separate mortgage note instruments, it had no legal instrument to assign—it was merely entering a change, as the mortgagee of record and *nominee* of the actual lending mortgagee, on its electronic books. Without the

ability to assign, MERS could not, therefore, be party to a CEMA transaction, either.

The state court decision dramatically altered the landscape for MERS and its mortgagors, including plaintiffs. When plaintiffs refinanced their mortgage, on January 7, 2013, they could not avail themselves of a CEMA, but a physical recording of the restructured indebtedness still had to be made with the County Clerk's office. Absent the CEMA, the new recording also meant plaintiffs were required to pay a second mortgage tax on the "new" mortgage (computed at $6835.20). Plaintiffs allege in this action that MERS was "on notice that its assignments and transfers of E-Sign mortgages were not valid in New York," presumably meaning, in effect, that their refinancings did not qualify for CEMA tax treatment. Plaintiffs contend they were unlawfully led to believe by MERS that their mortgage could be refinanced under a CEMA, and the second tax avoided. Their reliance on the CEMA-compliancy of MERS's E-Sign mortgage refinancing proved detrimental. Specifically they claim that they were forced to pay the second mortgage tax, contrary to representations by MERS that the refinancing would not involve a brand new mortgage, but rather a valid CEMA modification and assignment.

Plaintiffs filed this lawsuit against MERS alleging common law breach of warranty, as well as statutory claims of deceptive acts and practices in violation of GBL § 349, and false advertising in violation of GBL § 350. Plaintiffs also brought suit on behalf of all similarly situated persons, namely, "[a]ll qualified persons or entities in New York State who have been forced to pay the New York State

4

Mortgage Recording Tax upon refinancing of a mortgage due to [MERS]'s failure to warn that it would be required when utilizing a MERS E-Sign mortgage." (Compl. ¶ 55). Additionally, plaintiffs alleged that they "believe in good faith that the Class includes hundreds, and likely thousands, of persons and entities" and that "Class members are identifiable from records maintained by [MERS]." (*Id.* at ¶ 56).

## Standard of Review

Federal jurisdiction is available only when a federal question is presented, 28 U.S.C. § 1331, or when the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75000. 28 U.S.C. § 1332. In a putative class action, such as this case, the Class Action Fairness Act ("CAFA") further empowers the federal courts to exercise diversity jurisdiction where (1) at least one plaintiff and one defendant are citizens of different states; (2) the putative class contains at least 100 members; and (3) the amount in controversy is at least $5 million in the aggregate, not including interest or costs. 28 U.S.C. § 1332(d); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006).

A party may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to the district court "for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). If an action is "founded on a claim or right arising under the Constitution, treaties, or laws of the United States", it is "removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). CAFA also permits the removal to federal court of any cases filed in state court that meet its jurisdictional requirements. 28 U.S.C. § 1453.

A notice of removal, under any circumstance, must be filed within 30 days of the removing party's receipt of the summons and complaint, 28 U.S.C. § 1446(b)(1), or, "if the case stated by the initial pleading is not removable," then within 30 days of the receipt of any filing "from which it may first be ascertained that the case is one which or has become removable." 28 U.S.C. § 1446(b)(3). Finally, removal statutes are to be strictly construed, and any doubts are to be resolved in favor of remand. *See Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 382–83 (S.D.N.Y. 2006); *Codapro Corp. v. Wilson*, 997 F.Supp. 322, 324–25 (E.D.N.Y. 1998). The burden of showing the proper exercise of jurisdiction by the removal court rests with the party seeking removal. *See California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004); *Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir. 1994).

## Discussion

MERS asserts that two bases for federal jurisdiction exist in this case, which would make removal proper. First, under CAFA, MERS notes that the parties are diverse in citizenship, that the putative class includes more than 100 people, and that there is a reasonable probability that the aggregated class claims could exceed $5 million. Second, in the alternative, it argues that the case presents a federal question because it bears on the "legal effect, validity, or enforceability" of electronic promissory notes contemplated by the Federal Electronic Records and Signatures in Commerce Act, 15 U.S.C. § 7001 *et seq.*

Plaintiffs argue that this case should be remanded because, among other deficiencies, defendant's notice of removal was untimely. On this score, MERS admits that its notice of removal was entered well after the 30 day limitations period contemplated by 28 U.S.C. § 1446(b)(1), but retorts that removability—particularly, the amount in controversy to satisfy CAFA—was unclear from the face of plaintiffs' complaint, and, therefore, the removal clock was tolled until plaintiffs served on MERS papers making the amount in controversy explicit. *See* 28 U.S.C. § 1446(b)(3). As such, MERS urges that its notice is timely.

The synergistic effect of its concession on timeliness requires MERS to establish that plaintiffs made claims under state or federal law putatively sufficient to support removal only after they filed their bill of particulars, and not before, *i.e.*, when MERS was served with the complaint.

1. <u>Federal Question Jurisdiction</u>

To determine whether federal question jurisdiction exists, owing to a claim "arising under" federal law, the Court must look to the face of plaintiff's "well-pleaded complaint." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9–10 (1983); *Sullivan v. Am. Airlines*, 424 F.3d 267, 271 (2d Cir. 2005). Federal question jurisdiction requires either (1) a federal cause of action stated in the complaint, or (2) the complaint pleads "a state-law claim [which] necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products,*

7

*Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Federal question jurisdiction cannot be found where an issue of federal concern is merely tangentially related to a pleaded state law claim. *See Cnty. of Nassau v. New York*, 724 F. Supp. 2d 295, 302 (E.D.N.Y. 2010).

Plaintiffs, in their complaint, plead only state law causes of action. Spying federal concerns, MERS argues that a number of their allegations are inescapably clothed in federal law issues. For example, MERS argues that plaintiffs, by alleging that the gravamen of plaintiffs' complaint turns on the equivalency of E-Sign and traditional mortgages in determining qualification for CEMA tax treatment and, therefore, directly implicates the Federal Electronic Records and Signatures in Commerce Act, 15 U.S.C. § 7001 *et seq.*, which states, in relevant part, that electronic signatures and contracts will not be denied legal effect simply because they are in electronic form. 15 U.S.C. § 7001(a).

Essentially, and disturbingly, the thrust of the argument MERS advances would seem to make a federal case out of every dispute involving an electronic signature. No provision of the subject federal act, nor any case interpreting it, recognizes such a private right of action based on the electronic form of a document. At best, the federal law provides a defense to New York's application of its tax law to deny favorable treatment to E-Sign mortgage and note assignments, and even more remotely, perhaps, a defense to plaintiffs' claims here.[3] But, such tangential

---

[3] No one disputes that New York imposed an additional recording tax on plaintiffs.

8

connections do not support federal question jurisdiction. Even assuming MERS's lament amounts to a federal defense, federal defenses to state law causes of action do not support federal question removal. The propriety of removal is determined by the causes of action a plaintiff asserts, not the defenses a defendant interposes. As the Supreme Court ruled 30 years ago, "since 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14; *see also Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). Nothing has changed since. *See, e.g., New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (noting that a federal defense, even if it is the only issue in a case, does not pose a federal question for removal jurisdiction, citing cases spanning the last century). In any case, the Court need not tarry on this issue. Assuming MERS is right that plaintiffs' pleading presented a federal question, it knew that as soon as it received a copy of it, and had 30 days to seek removal. It failed to do so. The presence of a federal question in this lawsuit affords no timely basis for removal and cannot stave off plaintiffs' proper motion to remand.

2. CAFA and Diversity Jurisdiction

---

The lawfulness of that decision is not in issue here. This case concerns alleged representations by MERS that E-Sign mortgages like plaintiffs' were safe from such taxation when refinanced.

9

All else being equal, the individual claims alleged in the complaint are insufficient to meet the diversity threshold. As for diversity jurisdiction over a putative class action, under CAFA, it must be shown that (1) at least one plaintiff and one defendant are citizens of different states; (2) the putative class contains at least 100 members; and (3) the amount in controversy exceeds $5 million in the aggregate, not including interest or costs. 28 U.S.C. § 1332(d); *Blockbuster*, 472 F.3d at 56. Where the aggregate amount in controversy is not obvious from the face of the complaint, all that a removing defendant must show is that there is a "reasonable probability" that the amount in controversy could meet the threshold of $5 million. *Blockbuster*, 472 F.3d at 58. By the same token, "[w]here the pleadings themselves are inconclusive as to the amount in controversy . . . federal courts may look outside those pleadings to other evidence in the record." *United Food & Commercial Workers Union v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994).

Here, the complaint does not specify the damages sought except to state that plaintiffs were charged a second mortgage tax in the amount of $6,835.20, (Compl. ¶ 50), and that the proposed class would contain "hundreds, and likely thousands, of persons and entities", namely "[a]ll qualified persons or entities in New York State who have been forced to pay the New York State Recording Tax upon refinancing a mortgage" due to defendant's alleged conduct. (*Id.* at ¶¶ 55–56). In response to MERS's demand for a bill of particulars, plaintiffs noted that only documents under the control of MERS could allow a precise determination of the amount in

10

controversy, but reiterated that the class would likely contain at least 100 members, with each claiming damages stemming from the payment of a second mortgage tax upon refinancing. (Notice of Removal, Ex. C, 2; Dkt. No. 1). In sum, the bill of particulars provides not a byte more about the extent of the aggregate damages claimed than was provided by plaintiffs in their initial pleading.

Based on the totality of this information, MERS contends it has met its burden of demonstrating that diversity jurisdiction under CAFA is appropriate. It points out that the parties are of diverse citizenship (plaintiffs are citizens of New York, defendant is incorporated in Delaware and keeps its principal place of business in Virginia), (Notice of Removal ¶ 10, Dkt. No. 1), that the proposed class consists of "hundreds if not thousands of members," (Compl. ¶ 56), and avers that it reasonably extrapolates from plaintiffs' claim, "even using a conservative estimate of damages for each class member, there is a reasonable probability that the matter in controversy exceeds the value of $5,000,000.00." In further support of the reasonableness of its extrapolation, and based on its own records, MERS admits that at least 3000 notes exist on its registry for properties in New York. (Notice of Removal, ¶¶ 11–12).

### 3. Timeliness of Defendant's Notice of Motion

Assuming, for argument's sake, that MERS has made the showing required for a CAFA-based removal, still open is the question of whether the notice of removal was timely. Undisputedly, the removal notice was filed more than 30 days after MERS was served with a summons and complaint, which, of course, would

ordinarily time-bar removal. Safe harbor, MERS asserts, may be found in the complaint's failure to explicitly specify the amount of damages sought by the putative class. Indeed, belied by the fact that its notice of removal claims MERS had a good faith basis to remove this action on CAFA grounds when it did so, MERS brazenly also claims just the opposite—that the failure of the complaint to express such information means there was no basis to remove and that, in fact, "the removal clock has not started to run." (Def. Mem. Opp. 4, Dkt. No. 23). Quoting *Moltner v. Starbucks Coffee Co.*, MERS argues that "the removal clock does not start to run until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought," and therefore MERS had all the time in the world to enter its notice of removal. 624 F.3d 34, 38 (2d Cir. 2010); (Def. Mem. Opp. 4, Dkt. No. 23). CAFA, MERS seems to suggest, has a magic words requirement—and until a plaintiff says them, the defendant is free to dither.

Overlooked, obviously, is the logic that, if *Moltner* requires the service of a pleading explicitly specifying an amount in controversy that satisfies the $5 million threshold, and MERS represents that plaintiffs have served no such paper yet, the removal of this action by MERS on CAFA grounds (the only ground viable at this point) would even now be improper, and, therefore, that remand is the swift and appropriate remedy. *See Kum v. Walcott*, No. 12-cv-4608, 2012 WL 4772072, at *1 (E.D.N.Y. 2012) ("The Court concludes that defendants' notice of removal is untimely—not for lateness, but because it was filed *too early*." (emphasis in original) (citing *Moltner*, 624 F.3d at 38)).

*Moltner* was, however, designed to level the playing field, not to tilt it. Its *ratio* underscored a manifest principle of fairness, that a defendant cannot be expected to remove a case before its removability is made reasonably clear by the complaint and other information available to the defendant. *See* 624 F.3d at 37–38. Pointedly, *Moltner* noted that "[r]equiring a defendant to read the complaint and guess the amount of damages that the plaintiff seeks will create uncertainty and risks," and, in this light, the decision reaffirmed the principle that "while this standard requires a defendant to apply a reasonable amount of intelligence in ascertaining removability, it does not require a defendant to look beyond the initial pleading for facts giving rise to removability." *Id.* (quoting *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 205–06 (2d Cir. 2001)). The complaint here provided a defendant, with the information MERS possessed, all it needed to know in order to enable it to make an intelligent assessment as to CAFA removability.

Quite simply, plaintiffs put MERS on notice in their initial pleading of the scope of the putative class. MERS itself, as amply established by the papers it submitted in opposition to this motion, had in its own files the best evidence concerning the over 3000 New York mortgagors who fit the class profile—a profile, in aggregate amount, placing over $5 million in controversy. The essence of MERS's argument is that it was entitled to close its eyes to this information and, until plaintiffs, by recapitulating the information MERS would provide in discovery or otherwise, were able to put this information into the "magic words" MERS suggests *Moltner* requires, the removal clock was tolled.

13

Devilishly at best, in stark contrast to its stopped clock argument, MERS's notice of removal suggests that plaintiffs did, ultimately, speak the magic words. It pins removal to the words recited by plaintiffs in their bill of particulars. (Notice of Removal, Ex. C, 2; Dkt. No. 1). With the magic words spoken in the bill of particulars, MERS says it had enough information from plaintiffs to make a good faith CAFA removal filing, that is, the bill of particulars had provided it a reasonable basis to extrapolate that the $5 million threshold was satisfied. But, as noted earlier, the bill of particulars provided not a whit of new information. All that MERS had, after reading the bill of particulars, it had on its very first reading of the complaint. It had 30 days from that very first reading of the complaint to remove. *Moltner* provides no safe harbor.

Alternatively, there is a strong argument, given the nature of class action litigation, that since class action litigation was not involved in *Moltner*, the safe harbor provided by that case is not at all applicable here. A wealth of cases support the removal of putative class actions where the amount in controversy is not explicitly pleaded, but is found to exist on supplemental information provided by defendants. These cases place the laboring oar in the hands of the defendant and not the plaintiff, as *Moltner* does in the non-class action removal context. Ironically, that is precisely what MERS purported to do in its post-bill of particulars removal of this action. *See, e.g., Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348–50 (2013) (holding that a district court should, in considering remand, ignore plaintiff's stipulation that damages would not exceed $5 million when "[o]n the basis of

evidence presented by the company, the District Court found that that the 'sum or value' of the 'amount in controversy' would, in the absence of the stipulation, have fallen just above the $5 million threshold"); *Smith v. Manhattan Club Timeshare Ass'n*, No. 12-civ-6363, 2013 WL 1955882, at *3 (S.D.N.Y. 2013) (noting that in a class action, "[w]hen the complaint fails to allege a specific damages amount, and facts relating to the jurisdictional amount are challenged by the plaintiff, the defendant must establish the requisite amount in controversy with competent proof and justify [its] allegations by a preponderance of evidence." (internal quotations omitted) (citing *United Food*, 30 F.3d at 305)).

Here, plaintiffs alleged that over a thousand class members could have claims against MERS, and that plaintiffs' own claim was for at least $6835.20. These allegations alone would arguably give rise to an inference that there was a reasonable probability that the amount in controversy exceeded $5 million. MERS then upped the information ante. It not only acknowledged these allegations, it used them in conducting its own evaluation of potential damages. In short, MERS had all the other ingredients required by the CAFA recipe. It could, and did, offer its conclusion that there was a reasonable probability that more than $5 million was in controversy. In other putative class action lawsuits, courts have been satisfied that such showings by defendants are enough to meet the CAFA requirement and validate a removal sought on that basis. *See Ventimiglia v. Tishman Speyer Archstone-Smith Westbury, L.P.*, 588 F. Supp. 2d 329, 335 (E.D.N.Y. 2008) (removal was proper where defendants took an average claim advanced in the complaint,

multiplied it by an approximate number of claimants, and extrapolated additional damages from other pleaded torts). What is unusual, having made this showing, is that MERS wants the Court to turn a blind eye to it, and to the way it was able to make it.

In any event, *Moltner*'s holding that damages must be "explicitly specified" in a plaintiff's pleadings must be viewed as inapposite in the class action context, or, more limitedly, must be deemed as modified to recognize that defendants can have information outside of the pleadings that, in combination with the facts pleaded by the plaintiff, supports CAFA removal. Bizarrely, by applying the wooden magic words rule MERS advocates, a plaintiff could always defeat removal *precisely by* never supplying an aggregate amount in controversy. Case law clearly establishes that the explicit pleading gap can be plugged by information in the possession and control of the putative class action defendant alone. Since defendants can rely on self-provided knowledge to support removal, the level playing field requires that they not be given the option to ignore it in order to manipulate the removal clock.

Plainly, all of these linguistic contortions flow from MERS's recognition that, if the ordinary, common sense understanding of CAFA litigation were to apply, its notice of removal would be untimely. MERS had all that it needed to seek removal on CAFA grounds as soon as it was served with the complaint in this action. The bill of particulars added nothing, including no additional time to remove. MERS had 30 days from service of the complaint to remove this action. It did not do so.

## Conclusion

For these reasons, the Court concludes that it lacks subject matter jurisdiction, and this case is remanded to the Supreme Court of the State of New York, Kings County. The Clerk of Court is directed to transfer all filings on the docket to the Clerk of that court, and to close the case on the docket of this Court administratively.

SO ORDERED.

Dated: Brooklyn, New York
October 28, 2013

s/ENV

_____
ERIC N. VITALIANO
United States District Judge